645 So.2d 377 (1994)
Dusty Ray SPENCER, Appellant,
v.
STATE of Florida, Appellee.
No. 80987.
Supreme Court of Florida.
September 22, 1994.
Rehearing Denied December 6, 1994.
*379 James B. Gibson, Public Defender, and James R. Wulchak, Chief, Appellate Div., Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Dan Haun, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Dusty Ray Spencer, a prisoner under sentence of death, appeals his conviction for first-degree murder and the attendant sentence. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. We affirm Spencer's conviction for first-degree murder. However, because of error in the sentencing order, we vacate Spencer's sentence of death and remand this case for reconsideration by the judge.
Spencer was charged with the first-degree murder of his wife Karen Spencer, who was also Spencer's partner in a painting business. In early December 1991, Karen asked Spencer to move out of the house. On December 10, 1991, Spencer confronted Karen about money which she had withdrawn from the business account. During this argument, Spencer choked and hit Karen and threatened to kill her. Spencer was arrested after Karen reported the incident to the police. According to Karen's account to a police officer, Spencer called her from jail the next day and stated that he was going to finish what he had started as soon as he got out of jail.
Although Karen asked Spencer to return home during the holidays, she asked him to leave again after Christmas was over. While Spencer was drinking with friends on New Year's Day, he told one friend that he should take Karen out on their boat and throw her overboard. Two days later he told that friend that Karen refused to go out on the boat anymore.
On January 4, 1992, Spencer returned to Karen's home and got into a fight with Karen in her bedroom. Karen's teenage son Timothy Johnson was awakened by this fight. When Timothy entered his mother's bedroom, he saw Spencer on top of Karen, hitting her. When Timothy tried to intervene, Spencer struck him in the head with a clothes iron. Spencer followed Timothy back to his bedroom and struck him several more times with the iron. Spencer told Timothy, "You're next; I don't want any witnesses." Karen fled the house and sought help from a neighbor. When Timothy attempted to summon help on the telephone, Spencer yanked the phone cord from the wall. Spencer then fled the house and left town. Timothy and Karen were taken to the hospital and treated for their injuries. At the hospital, Karen told the treating physician that Spencer had hit her with an iron. At trial, the physician stated that Karen's wounds were consistent with having been inflicted with an iron.
Spencer returned to Karen's house on the morning of January 18, 1992. Timothy was again awakened by a commotion, grabbed a rifle from his mother's bedroom, and found Karen and Spencer in the backyard. Timothy testified that Spencer was hitting Karen in the head with a brick, and that he observed a lot of blood on Karen's face. Timothy tried to shoot Spencer, but the rifle misfired and he instead struck Spencer in the head with the butt of the rifle, which was shattered by this impact. Spencer pulled up Karen's nightgown and told her to "show your boy your pussy." He then slapped Karen's head into the concrete wall of the house. Karen told Spencer to "stop." When Timothy attempted to carry his mother away, *380 Spencer threatened him with a knife. Timothy ran to a neighbor's house to summon aid.
When the police arrived at the scene, they found Karen dead. She had been stabbed four or five times in the chest, cut on the face and arms, and had suffered blunt force trauma to the back of the head. The medical examiner testified that cuts on Karen's right hand and arm were defensive wounds and that death was caused by blood loss from two penetrating stab wounds to the heart and lung. The medical examiner also testified that all of the wounds occurred while Karen was alive and that she probably lived for ten to fifteen minutes after receiving the stab wounds in the chest. According to the medical examiner, Karen suffered three impacts to the back of the head that were consistent with her head being hit against a concrete wall. Because this impact would have caused Karen to lose consciousness, the medical examiner testified that the defensive wounds had to have occurred before the head trauma.
Spencer was charged with four counts: first-degree premeditated murder and aggravated assault for the January 18 incident and attempted first-degree murder and aggravated battery for the January 4 incident. Spencer moved to sever the counts because they involved separate incidents. The court denied the motion.
The jury convicted Spencer of first-degree murder and recommended a death sentence by a seven-to-five vote. The trial judge followed the jury's recommendation and imposed death. The judge found three aggravating circumstances: previous conviction of another felony involving violence[1] based upon the contemporaneous convictions; that the murder was especially heinous, atrocious, or cruel (HAC);[2] and that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP).[3] The judge found no statutory mitigating circumstances, and one nonstatutory mitigating circumstance (defendant's history and background).
Spencer was also convicted on the counts of aggravated assault and aggravated battery as charged in the indictment and the lesser-included offense of attempted second-degree murder. He was sentenced to five years for aggravated assault, fifteen years for attempted second-degree murder, and fifteen years for aggravated battery, with the sentences to run consecutively for a total of 35 years.
Spencer raises seven issues on appeal: 1) denial of his motion for judgment of acquittal based upon a lack of sufficient evidence to prove premeditation; 2) denial of his motion to sever the charges relating to the January 4 incident from those relating to the January 18 incident; 3) denial of his objections to the standard jury instructions on premeditation and reasonable doubt; 4) denial of his motion for a mistrial following the prosecutor's argument regarding matters not in evidence; 5) admission of hearsay evidence during the penalty phase; 6) death sentence improper because the trial court improperly found CCP and HAC aggravating circumstances, excluded the statutory mitigating circumstances of committed while the defendant was under the influence of extreme mental or emotional disturbance[4] and substantial impairment of the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law,[5] and failed to find that the mitigating circumstances outweigh the aggravating circumstances; and 7) the death penalty statute is unconstitutional. Four of these issues involve the guilt phase of the proceedings; the remaining three are directed to the penalty phase.

Guilt Phase
As his first issue, Spencer claims that the trial court erred in denying his motion for judgment of acquittal because the evidence was insufficient to prove premeditation. He contends that the conviction cannot be sustained because the State failed to *381 prove the homicide was premeditated beyond a reasonable doubt. He argues that the evidence fails to exclude a "heat of passion" killing and thus, at most, only supports a second-degree murder conviction.
Premeditation is a fully formed conscious purpose to kill that may be formed in a moment and need only exist for such time as will allow the accused to be conscious of the nature of the act about to be committed and the probable result of that act. Asay v. State, 580 So.2d 610, 612 (Fla.), cert. denied, 502 U.S. 895, 112 S.Ct. 265, 116 L.Ed.2d 218 (1991); Wilson v. State, 493 So.2d 1019, 1021 (Fla. 1986). Whether a premeditated design to kill was formed prior to a killing is a question of fact for the jury that may be established by circumstantial evidence. 580 So.2d at 612; 493 So.2d at 1021. Where there is substantial, competent evidence to support the jury verdict, the verdict will not be reversed on appeal. Cochran v. State, 547 So.2d 928, 930 (Fla. 1989). Moreover, the circumstantial evidence rule does not require the jury to believe the defendant's version of the facts when the State has produced conflicting evidence. Id.
Premeditation may be established by circumstantial evidence, including the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted. Holton v. State, 573 So.2d 284, 289 (Fla. 1990), cert. denied, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991).
Our review of the record in this case reveals that there was sufficient evidence from which the jury could have inferred premeditation and rejected Spencer's contention that this was a "heat of passion" killing. The nature and extent of Karen's injuries and the manner in which the homicide was committed support the jury's conclusion that Spencer formed a premeditated design to kill Karen. Karen died from multiple stab wounds to her chest. She also received four wounds to her face and defensive wounds on her hand and arm. Timothy Johnson testified that his mother asked Spencer to stop his attack, but he persisted by smashing her head against the concrete wall of the house three times. The evidence also shows that Spencer parked his car away from Karen's house on the day of the killing, wore plastic gloves during the attack, and carried a steak knife in his pocket. Spencer's previous attacks on Karen and the threats that he made to both Karen and her son are also proper evidence of premeditation. King v. State, 436 So.2d 50, 54-55 (Fla. 1983), cert. denied, 466 U.S. 909, 104 S.Ct. 1690, 80 L.Ed.2d 163 (1984).
Although Spencer does not challenge his convictions for aggravated assault, attempted second-degree murder, and aggravated battery, we also find that these convictions are adequately supported by the record.
Issue two concerns the joinder of the four counts against Spencer in a single trial. Spencer filed a pretrial motion to sever the charges stemming from the January 18 incident that resulted in Karen's death from the charges stemming from the January 4 incident. The motion argued that severance was proper because the counts involved different offenses which occurred two weeks apart, different weapons, and different circumstances. Spencer now claims that he was denied the rights to a fair trial and due process of law when the trial court denied his motion to sever the charges.
Under Florida Rule of Criminal Procedure 3.150(a),
[t]wo or more offenses which are triable in the same court may be charged in the same indictment or information in a separate count for each offense, when the offenses ... are based on the same act or transaction or on 2 or more connected acts or transactions.
Offenses are "connected acts or transactions" within the meaning of rule 3.150(a) if they occurred within a single episode. Wright v. State, 586 So.2d 1024, 1029-30 (Fla. 1991). Crimes can constitute a "single episode" if they are linked in some significant way. Ellis v. State, 622 So.2d 991, 1000 (Fla. 1993). Even crimes that are separated by a substantial lapse in time can constitute a single episode if the crimes are causally related to each other. Id.; Fotopoulos v. State, 608 So.2d 784 *382 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 2377, 124 L.Ed.2d 282 (1993) (finding that joinder of two murders which occurred about one month apart was proper because the crimes were causally linked). We find that the two incidents at issue in this case are causally related because they all stem from the same underlying dispute and involve the same parties. Thus, we find no error in the denial of Spencer's motion to sever the charges. Moreover, even if the charges had been severed, the evidence relating to the January 4 incident was relevant to the issue of premeditation and also would have been admissible "to establish the entire context out of which the crime arose." Griffin v. State, 639 So.2d 966, 969 (Fla. 1994).
As his third issue, Spencer argues that the trial court erred by giving the standard jury instructions for first-degree murder and reasonable doubt. We find no merit in either claim. We have rejected similar constitutional challenges directed at the reasonable doubt instruction. See Esty v. State, 642 So.2d 1074, 1078 (Fla. 1994); accord Brown v. State, 565 So.2d 304, 307 (Fla.), cert. denied, 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990), abrogated on other grounds, Jackson v. State, 648 So.2d 85 (Fla. 1994).
Spencer also argues that the standard instruction on first-degree murder is constitutionally deficient because it fails to adequately instruct the jury that a "premeditated design" is a statutory element of first-degree murder. We find no merit to this argument. Section 782.04(1)(a), Florida Statutes (1991), defines premeditated first-degree murder as the unlawful killing of a human being "[w]hen perpetrated from a premeditated design to effect the death of the person killed or any human being." This Court has explained this element of "premeditated design" as
a fully formed and conscious purpose to take human life, formed upon reflection and deliberation, entertained in the mind before and at the time of the homicide. The law does not prescribe the precise period of time which must elapse between the formation of and the execution of the intent to take human life in order to render the design a premeditated one; it may exist only a few moments and yet be premeditated. If the design to take human life was formed a sufficient length of time before its execution to admit of some reflection and deliberation on the part of the party entertaining it, and the party at the time of the execution of the intent was fully conscious of a settled and fixed purpose to take the life of a human being, and of the consequence of carrying such purpose into execution, the intent or design would be premeditated within the meaning of the law although the execution followed closely upon formation of the intent.
McCutchen v. State, 96 So.2d 152, 153 (Fla. 1957).
The standard first-degree murder instruction, which was given to the jury in the instant case, provides in relevant part that "killing with premeditation" is
killing after consciously deciding to do so. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.
Fla.Std. Jury Instr. (Crim.) 63. This instruction addresses all of the points discussed in McCutchen, and thus properly instructs the jury about the element of premeditated design.
Issue four is directed to the trial court's denial of Spencer's motion for a mistrial following the prosecutor's closing argument regarding matters not in evidence. During the trial, the State had attempted to introduce evidence that Karen was carrying a rifle around her house because she was afraid of Spencer. The court sustained the defendant's objection that this testimony was irrelevant to any issue at the trial. However, during closing argument the prosecutor stated that "Karen answered the door with the rifle in her hand" when a friend visited her on the night before the killing. The court sustained the defendant's objection to this comment, but denied his motion for a mistrial. *383 Spencer now contends that he was deprived of a fair trial by the prosecutor's argument, and thus a new trial is required.
The State argues that Spencer did not preserve this issue for appellate review because he did not request a curative instruction after the court denied his motion for a mistrial. We do not agree. In some circumstances, defense counsel may determine that a curative instruction would place undue emphasis on the issue and thus could actually cause more harm than the original improper comment. Defense counsel may also conclude that a curative instruction would not cure the error and thus is not necessary. Thus, a defendant need not request a curative instruction in order to preserve an improper comment issue for appeal. The issue is preserved if the defendant makes a timely specific objection and moves for a mistrial. Clark v. State, 363 So.2d 331, 335 (Fla. 1978), abrogated on other grounds, State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
In the instant case, Spencer adequately preserved this issue for review. Although comments on matters outside the evidence are clearly improper,[6] we do not find that the comments at issue here warranted a mistrial. In order for the prosecutor's comments to merit a new trial, the comments must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise. Blair v. State, 406 So.2d 1103, 1107 (Fla. 1981); Lopez v. State, 555 So.2d 1298, 1299 (Fla. 3d DCA 1990). The prosecutor's single comment about the rifle does not meet any of these requirements. Thus, the trial court did not err in denying Spencer's motion for a mistrial on this basis.
Finding no error as to the guilt phase of the proceedings below, we affirm Spencer's convictions.

Penalty Phase
In his fifth claim, Spencer asserts that the trial court improperly admitted hearsay testimony during the penalty phase of the proceedings. Over defense objections, a police officer testified about Karen's statements regarding Spencer's December 10, 1991, attack on her and his subsequent threat from jail to finish what he had started. Spencer now claims that the introduction of this hearsay testimony denied his constitutional rights to confront witnesses and due process of law. He also argues that this hearsay testimony was the sole basis discussed in the sentencing order for the CCP aggravating circumstance, and thus any error cannot be harmless.
Initially, we note that this testimony was not the only evidence cited in the sentencing order for the CCP factor. The order noted that Spencer "on numerous occasions prior to the date of the homicide had openly expressed his desires to kill the victim." In addition to the December 10 and 11 events related in the testimony at issue, the order also noted Spencer's actions and statements during the January 4, 1992, attack on Karen and his statement that he would like to take her out in the boat and throw her overboard. Moreover, based upon our disposition of the CCP issue below, any alleged error on this point would be harmless.
However, we find no error in admitting the officer's testimony. Although the testimony involved hearsay, it was admissible under Florida's death penalty statute. During the penalty phase proceedings for capital felonies, "[a]ny such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements." § 921.141(1), Fla. Stat. (Supp. 1992). This hearsay testimony was probative of both the CCP and HAC aggravating factors as it showed Spencer's intention to kill Karen as well as his intention to punish her. Spencer was also given an opportunity to cross-examine *384 the officer. Waterhouse v. State, 596 So.2d 1008, 1016 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 418, 121 L.Ed.2d 341 (1992); see also Clark v. State, 613 So.2d 412, 415 (Fla. 1992), cert. denied, ___ U.S. ___, 114 S.Ct. 114, 126 L.Ed.2d 79 (1993) (finding hearsay testimony about defendant's prior first-degree murder conviction admissible where defendant afforded opportunity to rebut, even though he did not or could not rebut the testimony).
Spencer's claim that Florida's death penalty is unconstitutional is without merit and has been consistently rejected by this Court. See Thompson v. State, 619 So.2d 261, 267 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993), and cases cited therein.
Spencer also contends that the imposition of the death penalty was in error because: 1) the trial court erroneously found that the aggravating factors of HAC and CCP applied to the homicide; 2) the trial court failed to find that the statutory mental mitigating circumstances were present; and 3) the trial court failed to find that the mitigating circumstances outweigh the aggravating circumstances.
We agree with the trial court the the murder here was especially heinous, atrocious, or cruel. The testimony indicated that the victim suffered three different injury patterns: blunt force injuries, stabbing injuries with a sharp instrument, and slashing injuries with a sharp instrument. There were four separate wounds to the victim's face. The most extensive of these wounds slashed the forehead, cut the nasal cartilage, cut both the upper and lower lip, and extended into the posterior jaw and chin. Spencer also stabbed Karen five times in the chest, including two penetrating wounds to the atrium of the heart and the right lung. These stab wounds resulted in extensive bleeding, which caused Karen's death. Karen also had several defensive wounds on her right hand and arm. Spencer slammed Karen's head against a concrete wall three times. The medical examiner testified that Karen was alive when she received all of these injuries, as evidenced by the massive bleeding and bruising. In a final act of humiliation, Spencer lifted Karen's nightgown, exposed her genitals to her teenaged son, and admonished her to "show your boy your pussy." Karen was still conscious at this point because she told Spencer to "stop." This Court has consistently upheld HAC findings under similar circumstances. Hannon v. State, 638 So.2d 39, 43 (Fla. 1994); Trotter v. State, 576 So.2d 691, 694 (Fla. 1990).
However, we find that the evidence does not support the trial court's finding of CCP. Although there is evidence that Spencer contemplated this murder in advance, we find that the evidence offered in support of the mental mitigating circumstances also negates the cold component of the CCP aggravator. During the penalty phase, a clinical psychologist testified that Spencer thought that Karen was trying to steal the painting business, which was a recapitulation of a similar situation with his first wife. The psychologist also testified that Spencer's ability to handle his emotions is severely impaired when he is under such stress. A neuropharmocologist agreed that Spencer has "very limited coping capability," "manifests emotional instability when he is confronted with [sudden shocks and stresses]," and "is going to become paranoid when stressed." This expert opined that Spencer's personality structure and chronic alcoholism rendered him "impaired to an abnormal, intense degree." In light of this evidence, we find that the trial court erred in finding that the murder was CCP.
We also find merit in Spencer's claim that the trial court improperly rejected the statutory mitigating circumstances. During the penalty phase, the two experts testified that Spencer suffered from chronic alcohol and substance abuse, a paranoid personality disorder, and biochemical intoxication. Based upon their testing, interviews, and evaluations, both experts concluded that Spencer was under the influence of extreme mental or emotional disturbance at the time the murder was committed and that his capacity to conform his conduct to the requirements of law was impaired. The sentencing order finds that neither of these mitigating factors is present.
*385 Whenever a reasonable quantum of competent, uncontroverted evidence of mitigation has been presented, the trial court must find that the mitigating circumstance has been proved. Nibert v. State, 574 So.2d 1059, 1062 (Fla. 1990). A trial court may reject a defendant's claim that a mitigating circumstance has been proved if the record contains competent substantial evidence to support the trial court's rejection of the mitigating circumstance. Id.; Kight v. State, 512 So.2d 922, 933 (Fla. 1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1100, 99 L.Ed.2d 262 (1988). In this case, the evidence of these mitigating circumstances that was submitted by Spencer was uncontroverted. The trial judge rejected the experts' opinions as speculative and conclusory. However, the experts based their opinions on a battery of psychological and personality tests administered to Spencer, clinical interviews with Spencer, examination of evidence in this case, and a review of Spencer's life history, school records, and military records. Thus, the trial court erred in not finding and weighing these statutory mental mitigating circumstances.
Based upon our rejection of the CCP aggravating factor and the trial court's failure to consider the statutory mental mitigating circumstances of extreme disturbance and impaired capacity, we are not certain whether the trial court would find that the aggravation outweighs the mitigation. Accordingly, we affirm Spencer's conviction for first-degree murder but vacate his death sentence and remand this case for reconsideration of the death sentence by the judge.
It is so ordered.
SHAW and HARDING, JJ., and McDONALD, Senior Justice, concur.
GRIMES, C.J., concurs in part and dissents in part with an opinion, in which OVERTON, J., concurs.
KOGAN, J., concurs in part and dissents in part with an opinion.
PER CURIAM.
Only three justices of the six-member panel have joined in the majority opinion. However, while Justice Kogan continues to believe that the sentence should be reduced to life imprisonment, he concurs with the result reached by the majority opinion to remand the case for reconsideration of the death sentence by the judge.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
GRIMES, Chief Justice, concurring in part, dissenting in part.
Rather than a crime of passion, this was a cold, calculated, and premeditated murder. On December 10, 1991, Spencer choked his wife and told her that he would kill her if she did not give him some money. The following day he called her from jail and said he would finish what he started when he got out. On January 1, 1992, he told a friend that he would like to take his wife out on a boat and throw her overboard. Two days later he reported that she wouldn't go out in a boat anymore. The following day, he beat his wife with an iron, requiring eleven stitches to her face. Finally, early in the morning of January 18, 1992, he parked his car away from her home and approached the house wearing surgical gloves. He might have remained undetected except that his wife's son was awakened by her screams from being hit in the head with a brick. After chasing the son away, Spencer stabbed his wife to death and fled. The fact that a killer's conduct may be motivated in part by emotion does not preclude a finding that the murder was cold, calculated, and premeditated.
Further, I find no error in the trial judge's treatment of mitigating circumstances. It is evident from a five-page discussion of the subject in the sentencing order that he carefully considered mental mitigation. The judge acknowledged Spencer's long-time abuse of alcohol and drugs and recognized that he suffered from a paranoid personality disorder. He simply concluded that Spencer's mental state did not rise to the level of statutory mitigation. As he had a right to do, he rejected the doctor's opinions to the contrary, primarily because there was no evidence of any type of alcohol or drug impairment at the time of the murder. As noted in the sentencing order, "despite suffering from *386 a paranoid personality disorder, chronic substance abuse and biochemical intoxication the Defendant ran a very successful business and was a great employer according to the testimony of Mr. Abrams."
I would affirm both the conviction and the sentence of death.
OVERTON, J., concurs.
KOGAN, Justice, concurring in part, dissenting in part.
In light of the strong case for mental mitigation here and the lack of cold calculated premeditation, I would reduce the penalty to life imprisonment without possibility of parole for twenty-five years. A remand here would be a useless act because the death penalty cannot be imposed based on the facts. I note that this case is directly on point with Santos v. State, 591 So.2d 160 (Fla. 1991), in which we remanded based on similar facts only to reverse the trial court's imposition of the death penalty in the appeal after remand. Santos v. State, 629 So.2d 838 (Fla. 1994). Moreover, based on our second Santos opinion, I believe death clearly cannot be proportional in this instance. I therefore dissent as to the remand, but otherwise concur with the majority.
NOTES
[1] § 921.141(5)(b), Fla. Stat. (1991).
[2] § 921.141(5)(h), Fla. Stat. (1991).
[3] § 921.141(5)(i), Fla. Stat. (1991).
[4] § 921.141(6)(b), Fla. Stat. (1991).
[5] 921.141(6)(f), Fla. Stat. (1991).
[6] See Pope v. Wainwright, 496 So.2d 798, 803 & n. 4 (Fla. 1986), cert. denied, 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987).