701 So.2d 562 (1997)
Kathleen WEIAND, Appellant,
v.
STATE of Florida, Appellee.
No. 95-01121.
District Court of Appeal of Florida, Second District.
July 11, 1997.
Rehearing Denied October 22, 1997.
*563 James Marion Moorman, Public Defender, and John C. Fisher, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Scott A. Browne, Assistant Attorney General, Tampa, for Appellee.
Stephanie C. Haun, Miami, for Amicus Curiae Center Against Spouse Abuse.
PER CURIAM.
In this appeal from her murder conviction, Kathleen Weiand raises six issues. We have examined each together with the entire trial transcript and conclude that none of the errors asserted require reversal. However, two of the issues raised do warrant discussion. One addresses the exclusion of certain defense witnesses and the other addresses the prosecutor's closing argument.
Kathleen Weiand was indicted on February 9, 1996, for the first degree murder of her husband, Todd Weiand. She defended this charge by relying on battered-spouse syndrome evidence to support a claim of self-defense. After eleven days of trial, the jury found her guilty of second-degree murder with a firearm.
The trial court excluded three defense witnesses. One witness was excluded as a discovery sanction. The other two witnesses were excluded based on an evidentiary ruling that their testimony was not admissible. Because we are required to apply the harmless error rule in our review of these rulings, we affirm. However, we address the rulings in order to correct the erroneous legal conclusions underlying them.
We first examine the discovery sanction. On the morning of the first day of trial just after the jury had been sworn, a witness that the defendant had been unable to locate appeared. Defense counsel immediately notified the prosecutor that the witness was present and available to be interviewed. The prosecutor declined to interview the witness and opted to object and ask that the witness be excluded on the ground that the discovery deadline had passed. This matter was presented to the trial court as a discovery problem *564 and a brief Richardson[1] hearing was conducted. Defense counsel explained that this witness had been a neighbor of the defendant and her husband and would testify about the abusive relationship and about once observing knots and marks on the defendant's body. Defense counsel also explained that she knew this witness existed but had been unable to locate her during the past year because she had moved and defense counsel did not have her complete name. The apartment complex where the witness had lived was sold and the new management said that no records from prior leases were available. None of the residents at the complex were able to give any helpful information. As it turns out, the witness had been working for the past year with a traveling carnival.
Defense counsel suggested that the State was not prejudiced because opening statements had not been given and the witness was present and could be deposed. The State responded that it was prejudiced because it would be necessary to investigate what the witness said and argued, "We've waited until after our jury was sworn to surprise the State with this witness. I think it's unfair." Without considering any other alternatives, the trial court stated that it would stand by its prior ruling regarding the discovery deadline and excluded the witness.
The late discovery or location of witnesses does not constitute prejudice per se. There are many cases in which circumstances arise that necessitate ongoing discovery during trial. While this is not a preferred situation, it is certainly not uncommon. Sometimes a continuance is warranted to allow sufficient time to prepare for the newly discovered evidence. More often a very brief recess, during which the parties work cooperatively to address the situation, provides sufficient preparation. More important than the fact that the State failed to demonstrate prejudice is the fact that nothing in this record shows a wilful discovery violation by the defendant. During the proffer of her testimony, the witness explained that she first learned about the case while watching the news the day before. She called the television station and learned that the trial was beginning the next day. Her first contact with defense counsel came after she arrived at the court. Defense counsel advised the prosecutor about the witness's presence about two minutes later. Defense counsel was just as surprised as the prosecutor to learn about the witness's presence. Because there was no wilful discovery violation, sanctions should not have been considered. Furthermore, even if the late disclosure had been a discovery violation, the trial court is required to consider less severe alternatives before excluding a witness as a sanction. Cooper v. State, 336 So.2d 1133, 1138 (Fla. 1976); L.W. v. State, 618 So.2d 349, 350-51 (Fla. 2d DCA 1993); Lee v. State, 534 So.2d 1226, 1227 (Fla. 1st DCA 1988); State v. Plachta, 415 So.2d 1356, 1358 (Fla. 2d DCA 1982).
The trial court also excluded the testimony of two defense witnesses, each of whom were being called to describe their personal observation of a single act of violence between the victim and the defendant that occurred approximately one year prior to the fatal shooting. The State argued that, since the defendant did not remember the specific details of each incident, the testimony was not relevant because the incidents could not affect her state of mind at the time of the shooting. Defense counsel argued that the expert witnesses would testify that prior acts of violence did contribute to the defendant's state of mind at the time of the shooting, that typically battered women have difficulty remembering specific dates and facts about abusive acts, and that a history of the relationship and a history of any abuse is important in diagnosing battered-spouse syndrome because an individual does not develop the syndrome overnight. The experts' testimony at trial was exactly as described by defense counsel. The trial court sustained the State's objection, stating, "I'll sustain the State's objection unless you have a case right on point." It is not surprising that no case directly on point was presented. Battered-spouse syndrome is a relatively new defense. See State v. Hickson, 630 So.2d 172 (Fla. 1993). Because the testimony of the witnesses was relevant to the factors used in *565 diagnosing battered-spouse syndrome, it was error to exclude it.
We have reviewed the entire trial transcript which includes the testimony of the defendant and thirty-two defense witnesses, two of whom were experts who presented exhaustive testimony explaining the battered-spouse syndrome, and both of whom rendered opinions that the defendant suffered from battered-spouse syndrome at the time she shot her husband. After examining the proffered testimony of the three excluded witnesses, together with all of the other evidence and testimony presented in this case, and applying the harmless error rule as we are required to do, we cannot conclude that the exclusion of these witnesses requires reversal. See § 924.33, Fla. Stat. (1995); State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
Finally, we address the prosecutor's closing argument. The defendant argues on appeal that the prosecutor's closing argument constitutes reversible error. However, at trial, defense counsel made no objections and no motions for mistrial, both of which are required to preserve this issue for appellate review. See Spencer v. State, 645 So.2d 377, 383 (Fla.1994). Therefore, unless there is fundamental error, we must affirm. See Steinhorst v. State, 412 So.2d 332 (Fla. 1982). We have carefully reviewed the closing argument and have found no fundamental error. However, we hasten to emphasize that our affirmance should not be construed as approval of the prosecutor's argument.
The law, as a profession, carries with it not only competency requirements but also ethical and professional requirements. As a result, lawyers have an obligation not only to present legally correct arguments but also to present them in a professional manner. Unfortunately, too many lawyers are forgetting their obligation of professionalism. To counter this problem, the Florida Bar has recently established the Center for Professionalism. Both trial and appellate courts have a responsibility to support this effort. "When there is overzealousness or misconduct on the part of either the prosecutor or defense lawyer, it is proper for either trial or appellate courts to exercise their supervisory powers by registering their disapproval, or, in appropriate cases, referring the matter to The Florida Bar for disciplinary investigation." See State v. Murray, 443 So.2d 955, 956 (Fla.1984).
In Bertolotti v. State, 476 So.2d 130, 134 (Fla.1985), the supreme court explained:
The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence. Conversely, it must not be used to inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.
It is not so much the central points in the closing argument that are offensive, but rather the manner in which the points are presented. In short, we can envision no case in which it would be proper to insult, belittle, or demean any person or legal defense or to engage in sarcasm or disrespectful levity. We realize that emotions can run high in the midst of trial. Nevertheless, we are confident that lawyers who discharge their responsibilities with a mind-set of professionalism and civility will avoid undignified and intemperate conduct.
Affirmed.
DANAHY, A.C.J., and FULMER and WHATLEY, JJ., concur.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla.1971).