842 So.2d 922 (2003)
Jeremiah Wade TILLMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D01-225.
District Court of Appeal of Florida, Second District.
March 12, 2003.
Rehearing Denied April 21, 2003.
*924 Richard Escobar of Escobar, Ramirez & Associates, P.A., Tampa, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jenny Scavino Sieg, Assistant Attorney General, Tampa, for Appellee.
SILBERMAN, Judge.
Jeremiah Wade Tillman appeals his convictions for first-degree murder, robbery with a firearm, dealing in stolen property, and grand theft of a motor vehicle. We agree that the evidence was insufficient to support the convictions for murder and robbery, although it was sufficient to support the lesser offenses of manslaughter with a firearm and petit theft, as well as the charged offenses of dealing in stolen property and grand theft of a motor vehicle. We affirm without comment the other issues raised by Tillman.
Although the State called numerous witnesses to testify at trial, much of its evidence was circumstantial. None of the State's witnesses observed the shooting that occurred on June 9, 1998. Tillman testified and also called several witnesses as part of his defense. The evidence as to the sequence of events immediately prior to and after the shooting was provided through Tillman's testimony.
Tillman and the victim, Gerald Gordy, Jr., were best friends. There was no evidence of animosity between them. Tillman testified that he had spent the night at Gordy's home, and the following day they were talking and watching television. The talk turned to fireworks and gunpowder. Gordy brought out his antique rifle and showed it to Tillman. Later, Gordy talked about wanting to make his own gun. He left the room and returned with his handgun to demonstrate and explain his plan to make a gun.
Gordy handed the gun to Tillman. Tillman stated that he was "messing with the gun," playing with its switches. Gordy was reclining on one couch, and Tillman was sitting close by on a second couch. Tillman did not believe that the gun had a round in the chamber because Gordy always preached gun safety and would never have left a round in the chamber. But when Tillman pulled the hammer back and *925 released it, the gun fired. The bullet struck Gordy and killed him.
Tillman testified that he panicked. He was scared to stay around and decided to leave town. He saw Gordy's keys and jewelry on a bookcase and grabbed them. He fled in Gordy's truck because his own truck had been repossessed a few days before the shooting, and he took the jewelry because he needed money to leave town. He went to a shop to pawn the jewelry, then later that evening he spent time with a friend. He did not tell anyone about the shooting. The next day, he left Florida. He was arrested eight days later at his grandparents' home in Tennessee.
There were no signs of a struggle at Gordy's home. The home had not been ransacked or disturbed, and valuables remained in the home. Gordy owned several guns, including the one that caused his death. Testimony was presented that he was safety conscious and generally did not keep a round in the firing chamber. However, there was evidence that Gordy had recently broken up with a girlfriend, was upset about it, and had written a letter that could be characterized as a suicide note.
Concerning the shooting, expert testimony was equivocal as to the exact distance from which the shot was fired and the exact positioning of Gordy and Tillman. It was undisputed that Tillman did not bring a weapon to Gordy's house, and there was no evidence that Tillman planned to kill Gordy. Although the State suggested that the circumstantial evidence established an intentional shooting, the record reflects that the evidence was not inconsistent with Tillman's testimony as to how the event occurred.
Following the State's presentation of evidence, and again at the close of all evidence, Tillman sought judgments of acquittal. He argued that the State failed to establish premeditation or that he had committed a crime such as robbery that would support a felony murder conviction. See § 782.04(1), Fla. Stat. (1997). He also asserted that the State failed to prove various lesser crimes.
A judgment of acquittal is appropriate if the State fails to present sufficient evidence to establish a prima facie case of the crime charged. See Olsen v. State, 751 So.2d 108, 110 (Fla. 2d DCA 2000). In this case, one of the key questions is whether the State presented sufficient evidence of premeditation in order to establish the charge of first-degree murder.
Premeditation may be established by circumstantial evidence, but "the evidence must be inconsistent with any reasonable hypothesis of innocence." Holton v. State, 573 So.2d 284, 289 (Fla.1990). If the evidence is sufficient to allow the jury to infer premeditation "to the exclusion of all other possible inferences, including accidental death," then the jury's verdict will be upheld. Id. If the State fails to exclude a reasonable hypothesis that the homicide occurred by something other than a premeditated design, a conviction for first-degree murder cannot be sustained. Norton v. State, 709 So.2d 87, 92 (Fla.1997).
Premeditation may be inferred from various factors such as the type of weapon used, previous difficulties between the parties, the presence or absence of adequate provocation, the manner in which the homicide was committed, and the nature and manner of the wounds that were inflicted. Spencer v. State, 645 So.2d 377, 381 (Fla.1994). The evidence must be sufficient to show that the accused was conscious of the act that was about to be committed and the probable result of that act. Id.
*926 Here, the State did not present sufficient evidence of premeditation to sustain the conviction for first-degree murder. The evidence demonstrated that a shooting resulted in Gordy's death, but the evidence was not inconsistent with Tillman's claim that the shooting was unintentional. This is particularly true due to the absence of evidence of any prior differences between Gordy and Tillman, provocation, a struggle, multiple wounds, or any plan or design by Tillman to shoot Gordy. Because the circumstantial evidence was not inconsistent with Tillman's hypothesis of innocence, his motion for judgment of acquittal as to premeditated first-degree murder should have been granted. See Burttram v. State, 780 So.2d 224, 227 (Fla. 2d DCA), review denied, 792 So.2d 1215 (Fla.2001); Fowler v. State, 492 So.2d 1344, 1347-48 (Fla. 1st DCA 1986).
The second theory that the State pursued to support a conviction for first-degree murder was that the shooting occurred when Tillman robbed Gordy. In order to sustain the conviction, the State was required to establish that Tillman took property from Gordy by force, violence, or assault, and killed him during the process. See Fowler, 492 So.2d at 1345. Here, as in Fowler, the State failed to present competent testimony or physical evidence to impeach or contradict Tillman's explanation of what happened; to believe the State's version would amount to pure speculation. Fowler, 492 So.2d at 1345; see Mahn v. State, 714 So.2d 391, 396-97 (Fla.1998) (concluding that the evidence did not overcome a reasonable hypothesis that the defendant did not intend to steal the victim's money and keys prior to the murders, but the evidence reasonably led to the conclusion that the property was taken as an afterthought to the murders). Accordingly, judgments of acquittal should have been entered as to first-degree felony murder and robbery. See Mahn, 714 So.2d at 397; Fowler, 492 So.2d at 1352.
Pursuant to section 924.34, Florida Statutes (1997), we must next determine whether the evidence supports convictions for lesser statutory degrees or necessarily included lesser offenses other than first-degree murder and robbery. The verdict form that the jury used reflected various alternatives to the charge of murder in the first degree including murder in the second or third degrees, with or without a firearm, and manslaughter with or without a firearm.
The key distinction between first and second-degree murder is that second-degree murder lacks the element of premeditation. Hines v. State, 227 So.2d 334, 335 (Fla. 1st DCA 1969). Second-degree murder is the unlawful killing of a person "when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual." § 782.04(2), Fla. Stat. (1997). The act must be one that a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another; is done from ill will, hatred, spite or an evil intent; and is of such a nature that it indicates an indifference to human life. Duckett v. State, 686 So.2d 662, 663 (Fla. 2d DCA 1996). The evidence simply did not establish the necessary elements to support a conviction of second-degree murder.
Third-degree murder is an unlawful killing that occurs during the perpetration of, or the attempt to perpetrate, a felony other than those felonies listed in section 782.04(4), Florida Statutes (1997). Because there was no evidence that Tillman perpetrated a qualifying felony, except perhaps as an afterthought to the shooting, *927 the evidence was insufficient to sustain a conviction for third-degree murder.
Section 782.07(1), Florida Statutes (1997), defines manslaughter as the killing of a person "by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder." Culpable negligence is more than a failure to use ordinary care; it is a course of conduct showing reckless disregard of human life or the safety of others. See Manuel v. State, 344 So.2d 1317, 1320 (Fla. 2d DCA 1977).
The evidence presented at trial and the reasonable inferences that may be drawn from that evidence were sufficient to prove manslaughter with a firearm. Tillman had served in the army and was trained in the use of various firearms. He knew that a basic rule of gun safety required that all guns be treated as if they are loaded. He never checked to see whether Gordy's gun was loaded, but he trusted Gordy to not have a round in the chamber. He was seated very close to Gordy while he was playing with the gun. He admitted that he pulled back and released the hammer and acknowledged that he must have pulled the trigger. Expert testimony established that the gun did not have a "hair-trigger." Under these circumstances, remand is required for entry of a conviction for manslaughter with a firearm.
The verdict form also listed lesser offenses as alternatives to robbery with a firearm including robbery with a deadly weapon, robbery, and petit theft. While the State failed to establish that Tillman robbed Gordy, the evidence was sufficient to support a conviction for petit theft as a result of Tillman taking some of Gordy's belongings after the shooting. See § 812.014(3)(a), Fla. Stat. (1997).
Accordingly, we reverse the convictions and sentences for first-degree murder and armed robbery and remand with directions that the trial court enter judgments and sentences for manslaughter with a firearm and petit theft. We affirm the convictions for dealing in stolen property and grand theft of a motor vehicle, but because of scoresheet changes necessitated by this opinion, we remand for resentencing.
Affirmed in part, reversed in part, and remanded with directions.
SALCINES and STRINGER, JJ., Concur.