# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

—————————————————

No. 1D16-1882

—————————————————

FRANCIS MAJAK LAI,

   Appellant,

   v.

STATE OF FLORIDA,

   Appellee.

—————————————————

On appeal from the Circuit Court for Duval County.
Marianne L. Aho, Judge.

August 1, 2018

RAY, J.

Francis Majak Lai and his co-defendant, Mackenley Fiacre, were charged with killing Barnat Bella while burglarizing his home. Both men were convicted of first-degree murder and armed burglary and sentenced to life in prison on each count. This is Lai's appeal. Because we find no reversible error in the issues presented, we affirm his convictions and sentences. We write to address a comment made during the State's closing argument and also note that remand is necessary to correct a scrivener's error on the written judgment.

I.

Jacksonville law enforcement officers were dispatched to Bella's home late one evening after his security alarm activated.

They arrived to find his bedroom window "blown out" and the blinds and curtains hanging outside the window. The bathroom window in the rear of the home was broken as well.

Once inside, they discovered Bella lying in the hallway with blood around his head and shell casings near his body. He had no pulse. The medical examiner who conducted the autopsy would later testify that Bella's death was a homicide caused by a bullet wound to the back of his neck that cut his spinal cord. The characteristics of the wound indicated that the end of the gun's muzzle was almost touching Bella's skin when the shot was fired.

Based on the locations of the glass around the two broken windows, the crime scene detectives determined the bathroom window was the entry point for the assailants and the bedroom window was the exit point. Lai's blood was found in the victim's hallway and bedroom, and Fiacre's blood was found on a piece of glass outside, under the broken bedroom window.[1]

Kiristina Jok, who was Lai's girlfriend at the time of the crimes, testified that Lai and Fiacre were friends. On the evening in question, Fiacre called her phone and she handed it to Lai. He then left. When Jok saw Lai a few hours later, he looked upset and had a cut on his arm. Jok tried to find out what had happened, but he would not tell her anything that evening. The next morning, Lai explained that he and "some other guy" broke into a house, the other guy fought with Bella and shot him, and Lai cut his arm on a window. Jok did not call the police. The couple broke up a week later, although they remained friends.

Jennifer Masters testified for the defense. Lai was the father of Masters's grandchild, and Lai lived with her for two months prior to his arrest. Lai told Masters that he could not pay rent "because he was attacked and robbed." On cross-examination, she testified that she was originally going to be a State's witness, but the day before her testimony, she told the prosecutor for the first time that she would testify that Lai told her he had been attacked and robbed. Though Masters admitted she never told the police or

---

[1] In an interview with police that was played for the jury, Fiacre denied knowing Bella or being in his home.

prosecutor about Lai's claim in the three years the case was pending, she explained she had just remembered that detail and pointed out that she had never been asked whether Lai told her he was attacked. She admitted testifying in a prior deposition that when she saw Lai after the murder, he had a cut on his arm and he claimed he did not remember how he got it.

## II.

In his first issue, Lai contends the trial court erred when it refused to give a curative instruction and denied his motion for a mistrial after he successfully objected to an improper comment made during closing argument. During the course of trial, counsel for both defendants implicitly or explicitly suggested that the police were untruthful, the prosecutor pressured witnesses to testify in the State's favor, and the police and prosecutor may have concealed evidence. During the State's rebuttal closing, the prosecutor attempted to refute those allegations by referencing the evidence and explaining his actions. However, the prosecutor went further, stating,

> I'm hoping that maybe by what you saw with Jennifer Masters and how that whole scenario went down, you might see that cops and the government and the State Attorneys we really don't lie. You saw what happened—.

At that point, counsel for both defendants objected. The trial court sustained the objection in front of the jury, but after a sidebar conference, the court declined to give a curative instruction and denied the defendants' motions for mistrial.

Lai argues the comment that "cops and the government and the State Attorneys we really don't lie" improperly bolstered the government witnesses' testimony by suggesting that government and law enforcement officials are inherently truthful or credible. The State counters that the comment was invited by defense counsel's suggestion that the prosecutor and police were pressuring witnesses, lying, and concealing, tampering with, or planting evidence.

We review a trial court's ruling on a motion for mistrial based on improper prosecutorial comments for an abuse of discretion.

3

*Salazar v. State*, 991 So. 2d 364, 371 (Fla. 2008). A trial court abuses its discretion when no reasonable person would take the view adopted by the trial court. *Id.* at 372. "In order for the prosecutor's comments to merit a new trial, the comments must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise." *Id.* (quoting *Spencer v. State*, 645 So. 2d 377, 383 (Fla. 1994)).

At the outset, we conclude that the prosecutor's statement constituted improper bolstering. A prosecutor may not bolster a witness's testimony by implying that one's position as a law enforcement official makes that witness more credible or less likely to lie. *See, e.g., Johnson v. State*, 177 So. 3d 1005, 1008 (Fla. 1st DCA 2015); *Williams v. State*, 747 So. 2d 474, 475 (Fla. 5th DCA 1999). We reject the State's assertion that the comment was justified as an invited response. While the prosecutor could have pointed to facts in evidence to suggest that the officers in the case were credible or that he was not pressuring witnesses to testify, he could not suggest that State Attorneys, police officers, or other government officials do not lie based on the nature of their positions. *Cf. Payne v. State*, 233 So. 3d 512, 515 (Fla. 1st DCA 2017) (noting that it was improper to suggest that a deputy should be believed because he is a sworn law enforcement officer in response to defense attacking deputy's credibility). Thus, the trial court properly sustained the objection.

However, the trial court's denial of the motion for mistrial was not an abuse of discretion. The improper comment was an isolated one. *Cf. Jenkins v. State*, 96 So. 3d 1110, 1113-14 (Fla. 1st DCA 2012) (finding prosecutor's comment, although improper, was isolated and not grounds for a mistrial). Further, the context in which the comment was made reveals that the prosecutor was pointing to specific evidence in the record to demonstrate that neither he nor the police were lying or concealing evidence. Finally, the comment did not materially contribute to the verdict given the evidence against Lai. Jok testified that Fiacre called Lai the night of the murder and Lai left. When he returned, he had a cut on his arm. The next day, he admitted taking part in a burglary during

which his co-perpetrator shot someone. Lai did not contest the facts that his blood was in the house or that he cut himself from glass from one of the broken windows. His theory of defense—unsubstantiated by any direct evidence—was that he was an invited guest of Bella's that evening but he ran away and jumped out the bedroom window when the real perpetrator showed up and began firing.[2] This was not a case that rested solely on circumstantial evidence or competing witness accounts. *Cf. Williams v. State*, 673 So. 2d 974 (Fla. 1st DCA 1996) (reversing conviction where prosecutor suggested officers would not lie where whole case was based on whether defendant or police officers were more credible). We conclude that the isolated comment, made in response to defense suggestions of impropriety, did not vitiate the entire trial and render it unfair.

## III.

Although we find that no reversible error occurred below, one matter needs to be corrected. Lai filed a motion to correct a sentencing error because the written judgment reflects that he entered a guilty plea when it should reflect that he was convicted after a jury trial. It does not appear that the trial court ruled on the motion within sixty days, so the motion is deemed denied. *See* Fla. R. Crim. P. 3.800(b)(2)(B). We agree with Lai on this point and direct the lower court to correct this scrivener's error. *See Blake v. State*, 187 So. 3d 1291 (Fla. 1st DCA 2016) (remanding for correction of discrepancy between oral pronouncement and written sentence).

AFFIRMED and REMANDED for correction.

B.L. THOMAS, C.J., and WOLF, J., concur.

---

[2] Lai allegedly then climbed back in through a window to check on Bella, which is how his blood ended up in the apartment. The presence of Fiacre's blood was not explained.

5

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____


Candice K. Brower, Regional Conflict Counsel, Gainesville, and Melissa J. Ford, Assistant Regional Conflict Counsel, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Kaitlin Weiss, Assistant Attorney General, Tallahassee, for Appellee.