[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-16503

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 22, 2010
JOHN LEY
CLERK

D. C. Docket No. 03-00991-CV-ORL-28JGG

DUSTY RAY SPENCER,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 22, 2010)**

Before EDMONDSON, MARCUS and PRYOR, Circuit Judges.

MARCUS, Circuit Judge:

In this capital case, Dusty Ray Spencer, a Florida prisoner convicted of first degree murder, aggravated assault, attempted second-degree murder, and aggravated battery, appeals the district court's denial of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. We granted Spencer a Certificate of Appealability on his claim that the state court erroneously denied him relief because of prosecutorial misconduct. Spencer alleges seven instances of misconduct. Five of them are procedurally barred, the sixth one was not included in the Certificate of Appealability ("COA") granted by this Court, and the seventh claim is without merit. Accordingly, we affirm the judgment of the district court and deny the petition.

I.

Spencer was convicted of murdering his wife, Karen Spencer, who was also his partner in a painting business. The essential facts of the murder, as elicited from the trial testimony, and not disputed here, are these.

In early December 1991, Karen asked Spencer to move out of their home. On December 10, 1991, Spencer and Karen had an argument about money Spencer claimed that Karen had withdrawn from the bank account of their painting business. During the argument, Spencer choked Karen, hit Karen, and then

2

threatened to kill her. Karen reported this incident to the police, which resulted in Spencer's arrest. According to another report Karen filed with the police, Spencer called her from jail the day after his arrest and threatened to kill her as soon as he was released.

Karen asked Spencer to return to their home, where her teenage son and Spencer's step-son Timothy Johnson also resided, during the December holidays for four or five days. However, she asked him to leave again, which he did, a few days after Christmas. Spencer went out drinking with his friends on New Year's day, and he told one of them that he should take Karen out on their boat and throw her overboard. Two days later Spencer spoke again with his friend. This time Spencer told him that Karen refused to go out on the boat with him.

In the early morning of January 4, 1992, Spencer again returned to Karen's home, and he began arguing with her and physically beating her in her bedroom. Timothy was awakened by his mother's screams, and, when he ran to his mother's bedroom, he saw Spencer holding Karen down on the bed and punching her in the face with his fist. When Timothy attempted to help his mother, Spencer grabbed a clothes iron and struck Timothy in the head with it repeatedly. Spencer told Timothy, "You're next; I don't want any witnesses." Timothy fled to his bedroom and attempted to call the police, but Spencer followed him into the room and

yanked the telephone out of the wall.  Spencer continued to strike Timothy in the face with the clothes iron despite Timothy's pleas for him to stop.  Spencer added that he was going to ruin his mother's life the way she had ruined his.  Spencer then fled the house.

During the altercation between Spencer and Timothy, Karen was able to escape and took refuge in a neighbor's home.  Timothy and Karen were taken to the hospital, where they were treated for their injuries.  While there, Karen told her treating physician that Spencer had hit her with a clothes iron, and, at Spencer's trial, the physician testified that Karen's wounds were consistent with strikes from a clothes iron.  Karen and Timothy also filed statements with the police on the day of their attack.

In the early morning of January 18, 1992, Spencer returned still again to Karen's home.  Timothy was again awakened by his mother's screams.  Timothy ran out of his room, and, after not finding his mother in her bedroom, he grabbed the rifle she kept there and ran out the front door and around the side of the house.  Once he turned the corner of the house, he saw Karen in the backyard laying on the ground, as Spencer kneeled on top of her and repeatedly hit her in the head with a brick while she screamed.  Timothy saw his mother's face covered in blood.  Timothy tried to shoot Spencer with the rifle, but it misfired, and, instead, ran at

4

him and hit Spencer in the head with the plastic butt of the rifle, which shattered on impact. Spencer then stood up, lifted Karen's nightgown, told her to "show your boy your pussy," and then slapped her head against the concrete wall of the house, as she begged Spencer to stop. Timothy attempted to pick up his mother and carry her away, but Spencer threatened him with a knife. Timothy set his mother down, grabbed the rifle, and ran to the neighbor's house for help while yelling for someone to call 911.

When the police arrived at the scene, Karen was dead. In addition to suffering blunt force trauma to the back of her head, she had been cut on the face, the hand, and the arms, and had been stabbed four or five times in the chest with a knife. A medical examiner testified that her death was caused by blood loss from two stab wounds to the heart and to the lung, and that the cuts on her hand and arm were defensive wounds. The medical examiner also testified that all of the wounds occurred while Karen was alive and that she had probably lived for ten to fifteen minutes after being stabbed repeatedly in the chest. According to the medical examiner, Karen sustained three impacts to the back of her head consistent with her head having been hit against a concrete wall.

Spencer was charged with four counts: first-degree premeditated murder and aggravated assault for the January 18th attack of Karen and Timothy, and

5

attempted murder and aggravated battery for the January 4th attack on Karen and Timothy. The jury convicted him of first-degree murder, aggravated assault, the lesser-included offense of attempted second-degree murder, and aggravated battery. It recommended that Spencer receive the death sentence for the first-degree murder conviction by a vote of seven-to-five. The trial judge followed the jury's recommendation and imposed the death penalty. In addition, Spencer was sentenced to five years for aggravated assault, fifteen years for attempted second-degree murder, and fifteen years for aggravated battery, all to run consecutively.

Spencer's conviction was affirmed on direct appeal. Spencer v. State, 645 So.2d 377, 385 (Fla. 1994). Most notably for our purposes, the Florida Supreme Court rejected Spencer's claim that the trial court erred when it denied a motion for mistrial because the prosecutor referenced a fact not admitted into evidence in her closing argument. Id. at 383. The non-admitted fact at the center of the claim was the prosecutor's statement that "Karen answered the door with the rifle in her hand" when a friend visited her on the night before the murder. Id. at 382. During the trial, the prosecutor had attempted to elicit evidence that Karen was carrying a rifle around her house because she was afraid of Spencer; the trial court sustained Spencer's objection, finding that it was irrelevant. Id. The Florida Supreme Court explained that this comment in closing argument did not require the reversal of

6

Spencer's conviction, because, although it was improper, a single comment about the rifle did not deprive Spencer of a "fair and impartial trial," did not "materially contribute to the conviction," was not "so harmful or fundamentally tainted as to require a new trial," and was not "so inflammatory that [it] might have influenced the jury to reach a more severe verdict than that it would have otherwise." Id. at 383. Spencer did not allege any other instance of prosecutorial misconduct on direct appeal.

The Florida Supreme Court did, however, vacate Spencer's capital sentence, because the trial court improperly found an aggravating circumstance and improperly rejected a statutory mitigating circumstance. Id. at 384-85. On remand, the trial court conducted another hearing and found two aggravating circumstances (Spencer's previous conviction of another felony involving violence based on the contemporaneous convictions, pursuant to Fla. Stat. § 921.141(5)(b); and the especially heinous, atrocious or cruel nature of the murder, pursuant to Fla. Stat. § 921.141(5)(h)), and three mitigating circumstances (the murder was committed while Spencer was under extreme mental or emotional disturbance, pursuant to Fla. Stat. § 921.141(6)(b); Spencer's capacity to appreciate the criminality of his conduct was substantially impaired, pursuant to pursuant to Fla. Stat. § 921.141(6)(f); and there were a number of non-statutory mitigating factors

in Spencer's background) before again imposing a capital sentence.

Spencer appealed the sentence, and the Florida Supreme Court found no merit to that challenge. See Spencer v. State, 691 So.2d 1062 (Fla. 1996). Spencer then filed a petition for writ of certiorari with the United States Supreme Court, which was denied. Spencer v. Florida, 522 U.S. 884 (1997).

On September 24, 1999, Spencer filed an amended motion for post-conviction relief with the state trial court pursuant to Fla. R. Crim. P. 3.850, raising fourteen claims, one of which alleged multiple instances of prosecutorial misconduct. After conducting an evidentiary hearing in March 2000, the state trial court denied all of them. In particular, it denied Spencer's prosecutorial misconduct claims as procedurally barred. In addition, the state trial court concluded that Spencer's prosecutorial misconduct claims were without merit. Spencer appealed to the Florida Supreme Court, which again rejected all of his claims and, in particular, found that all of Spencer's prosecutorial misconduct claims were procedurally barred because they could and should have been raised on direct appeal, but had not been. See Spencer v. State, 842 So.2d 52, 60-61 (Fla. 2003).

On October 10, 2003, Spencer commenced the instant petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in the United States District Court for

8

the Middle District of Florida, arguing, _inter alia_, that his constitutional right to a fair trial was denied because of multiple instances of prosecutorial misconduct. The district court denied the petition in a lengthy order rejecting Spencer's prosecutorial misconduct claims, along with seven others.

As for the prosecutorial misconduct claim, the district court first found, as had the Florida Supreme Court, that five of Spencer's misconduct claims were procedurally barred: (1) during closing argument, the prosecutor cried while wearing latex gloves; (2) during opening statement, the prosecutor erroneously said that Timothy witnessed Spencer beating Karen with a clothes iron, and that evidence would be presented that Karen was armed with a rifle the night before her murder; (3) during the direct examinations of Karen's son Timothy Johnson and friend Krista Mays, the prosecutor again asked if Karen was armed with a rifle the night before her murder; (4) during closing argument at the penalty phase, the prosecutor erroneously claimed that Spencer told Dr. Lipman that he had stabbed Karen before Timothy fled the scene; and, finally, (5) the prosecutor improperly commented on Spencer's right not to testify.

The district court explained that all of these claims were procedurally barred, because the Florida Supreme Court's denial of them on procedural bar grounds was a correct application of Florida law. The district court also found that Spencer was

9

unable to overcome the procedural default bar, because he demonstrated neither cause and prejudice nor a fundamental miscarriage of justice.

Finally, the district court rejected on the merits Spencer's claim that misconduct occurred when, during closing argument, the prosecutor told the jury that Karen was armed with a rifle on the night before her murder, after the trial court had earlier sustained Spencer's objection to that evidence. The district court explained that "[t]he prosecutor's single comment about the rifle, when considered in the context of the entire proceeding, in no way rendered the entire proceeding unfair," because there was overwhelming evidence of Spencer's guilt. Spencer v. Crosby, No. 6:03-cv-991-Orl-28JGG, slip op. at 23 (M.D. Fla. Sept. 7, 2006).

On September 1, 2009, we granted Spencer a Certificate of Appealability concerning each of his prosecutorial misconduct claims, pursuant to 28 U.S.C. § 2253(c)(2). Spencer v. Sec'y, Dep't of Corr., No. 06-16503, order (11th Cir. Sept. 1, 2009).

## II.

Since Spencer filed his habeas petition after the 1996 effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 18 U.S.C. § 2254, our review is governed by that statute, "which establishes a highly deferential standard for reviewing state court judgments." Carroll v. Sec'y, Dep't of Corr.,

574 F.3d 1354, 1364 (11th Cir. 2009) (quotation marks and citation omitted).

According to AEDPA,

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2). Moreover, "we review the district court's findings of fact for clear error, and review <u>de novo</u> both questions of law and mixed questions of law and fact." <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1224 (11th Cir. 2004). Whether a particular claim is procedurally barred is reviewed <u>de novo</u>. <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001).

"A state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Court's." <u>Windom v. Sec'y, Dep't of Corr.</u>, 578 F.3d 1227, 1247 (11th Cir. 2009) (quotation marks, alteration, and citation omitted). A state court decision involves an unreasonable application

11

of federal law when "it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001) (citations omitted). The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000).

## III.

Spencer's basic claim on appeal is that the prosecutor engaged in multiple acts of misconduct which denied him a fundamental right to a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Specifically, he contends that the prosecutor committed misconduct in seven ways: (1) during closing argument at the guilt phase, the prosecutor cried while wearing latex gloves identical to those Spencer allegedly wore as he murdered Karen, while flailing in the air the brick Spencer allegedly used to kill Karen; (2) during opening statement, the prosecutor erroneously said that Timothy witnessed Spencer beating Karen with a clothes iron, and stated that evidence would be presented that Karen

12

was armed with a rifle on the evening before her murder; (3) during the direct examinations of Karen's son Timothy Johnson and friend Krista Mays, the prosecutor asked whether Karen was armed with a rifle the night before her murder; (4) during closing argument at the penalty phase, the prosecutor erroneously claimed that Spencer told a defense expert that he had stabbed Karen before Timothy fled the scene; (5) during the penalty phase, the prosecutor improperly commented on Spencer's right not to testify by cross-examining the defense experts as to whether Spencer was under oath at the time they interviewed him; (6) during the direct examination of Orange County Deputy Sheriff Sandra Blume, the prosecutor improperly elicited testimony that Karen's dog had to be removed from the crime scene; and (7) during the closing argument, the prosecutor said that Karen was armed with a rifle the night before her murder, after the trial court had sustained Spencer's objection to the admission of that evidence.

We are not persuaded.

## A.

The first insurmountable hurdle Spencer faces is that the first five claims of prosecutorial misconduct are procedurally barred.

It is by now abundantly clear that we cannot consider a claim where "the last state court rendering a judgment in the case clearly and expressly state[d] that its

13

judgment rests on a state procedural bar." Parker v. Sec'y, Dep't of Corr., 331

F.3d 764, 771 (11th Cir. 2003) (quotation marks and citation omitted).

Accordingly, "[a] federal habeas claim may not be reviewed on the merits where a

state court determined . . . that the petitioner failed to comply with an independent

and adequate state procedural rule that is regularly followed." Philmore v. McNeil,

575 F.3d 1251, 1260 (11th Cir. 2009); see also Judd, 250 F.3d at 1313 ("A state

prisoner seeking federal habeas relief cannot raise a federal constitutional claim in

federal court unless he first properly raised the issue in the state courts.") (citing

Wainwright v. Sykes, 433 U.S. 72, 87 (1977)). "The doctrine of procedural default

was developed as a means of ensuring that federal habeas petitioners first seek

relief [in state court] in accordance with established state procedures." Judd, 250

F.3d at 1313.

As the district court correctly explained, the first five claims of prosecutorial

misconduct were procedurally barred, because the Florida Supreme Court had, on

collateral review, denied them based on an independent and adequate rule of

Florida procedure. In particular, the Florida Supreme Court explained that:

> Spencer claims that the prosecutor engaged in various misconduct
> during both the guilt and penalty phases of trial, including improper
> Golden Rule arguments, improper appeals to the jury's emotions,
> eliciting prohibited testimony, making false statements, and
> improperly commenting on Spencer's right not to testify. . . . We
> conclude that Spencer's substantive claims of prosecutorial

14

misconduct could and should have been raised on direct appeal and thus are procedurally barred from consideration in a postconviction motion. See Smith v. State, 445 So.2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."). Each of the alleged violations appears on the trial record and could have been raised on direct appeal. Thus, the postconviction court properly concluded that the claims were procedurally barred and we affirm the denial of relief on this claim.

Spencer, 842 So.2d at 60-61.[1]

There is no doubt that, under Florida law, a claim is procedurally barred from being raised on collateral review if it could have been, but was not raised on direct appeal. See Philmore, 575 F.3d at 1264 ("Florida law bars claims in a state post-conviction proceeding that could have been raised on direct appeal."); see also Smith v. State, 445 So.2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."). Moreover, Spencer has made no claim that this rule is not regularly followed by the Florida courts. Indeed, Fla. R. Crim. P. 3.850, which governs the collateral review process in Florida, itself clearly states "[t]his rule

---

[1] It is of no moment that the state trial court not only rejected these claims as procedurally barred on collateral review, but also offered an alternative determination on the merits. Our precedent could not be clearer that we look to "the last state court rendering a judgment in the case," here the Florida Supreme Court, to determine whether the claim was resolved only on state procedural grounds. Judd, 250 F.3d at 1313. Nor could it be clearer that the Florida Supreme Court rejected these five claims only on independent and adequate state procedural grounds. Further, even where a court makes an alternative merits determination, we remain bound by the application of the procedural bar. See Parker, 331 F.3d at 774-75 (explaining that "an alternative merits holding leaves the procedural bar in place").

15

does not authorize relief on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence." See also Bates v. Dugger, 604 So.2d 457, 458 (Fla. 1992) ("Rule 3.850 does not authorize relief based upon grounds which could have been or should have been raised at trial and, if properly preserved, on direct appeal.") (quotation marks and citation omitted).

This procedural bar may be overcome -- and we may consider the merits of these claims -- only if Spencer demonstrates both cause for the failure to raise the claims on direct appeal and actual prejudice, or demonstrates that a "failure to consider the claims will result in a fundamental miscarriage of justice." See Muhammad v. Sec'y, Dep't of Corr., 554 F.3d 949, 957 (11th Cir. 2009) (quotation marks and citation omitted). "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003) (quotation marks and citation omitted). "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." Id. (citation omitted). Finally, "[a] 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the

16

conviction of someone who is actually innocent." Id. (citation omitted).

Spencer has not argued, however, that there is any cause or prejudice to excuse his procedural default. In fact, all of the alleged instances of procedural misconduct were known at the time he filed his direct appeal. Nor, finally, does he claim that he is actually innocent. Accordingly, we cannot consider the first five claims of misconduct.

## B.

Nor can we consider the merits of the sixth claimed act of prosecutorial misconduct -- that the prosecutor improperly elicited testimony that Karen's dog had to be removed from the crime scene -- because that claim was not authorized by the COA we granted to Spencer. It is abundantly clear that "our review is restricted to the issues specified in the certificate of appealability." Williams v. Allen, 598 F.3d 778, 795 (11th Cir. 2010); McClain v. Hall, 552 F.3d 1245, 1254 (11th Cir. 2008); Murray v. United States, 145 F.3d 1249, 1250-51 (11th Cir. 1998); see also 28 U.S.C. § 2253(c)(3) (explaining that the COA must specifically indicate the issues for review).

Our grant of a COA in this case was limited to "Claim 2, the prosecutorial misconduct claim." Spencer v. Sec'y, Dep't of Corr., No. 06-16503, order (11th Cir. Sept. 1, 2009). In his Renewed Application for Certificate of Appealability,

Spencer listed only six separate instances of prosecutorial misconduct -- the other six acts addressed in this opinion -- and made no mention of the testimony of Deputy Sheriff Blume about Karen's dog.[2] Nor is that testimony in any way related to the six alleged instances of misconduct detailed in the Renewed Application for Certificate of Appealability. Thus, to the extent that Spencer now argues that the prosecutor engaged in misconduct by questioning Blume about the removal of Karen's dog from the crime scene, he has not raised a cognizable claim within the scope of the review specified in the COA. See Williams, 598 F.3d at 795.

---

[2] We can find only two mentions of this claim in the entire record of the case, both of which were contained in Spencer's state habeas claims. First, before the state trial court (the Circuit Court for the Ninth Judicial Circuit), Spencer filed an Amended Motion to Vacate Judgements of Conviction and Sentence on September 24, 1999, which included within his claim of prosecutorial misconduct an allegation that the prosecutor committed misconduct when she elicited testimony from Deputy Sheriff Blume that a dog was removed from the crime scene. Florida v. Spencer, No. CR92-473, Slip Op. at 10-11 (Fla. Cir. Ct. April 24, 2000). The state trial court rejected this claim as procedurally barred and otherwise without merit. Id. at 11. Spencer did not raise that claim in his appeal of the state trial court's denial of his motion. Second, Spencer filed a state habeas corpus petition directly with the Florida Supreme Court at the same time he sought review of certain portions of the denial of his Amended Motion for Post Conviction Relief. In that accompanying habeas petition, Spencer alleged that his appellate counsel was ineffective in failing to raise claims of prosecutorial misconduct, including the failure to claim that the question about the dog amounted to misconduct. Spencer, 842 So.2d at 74. The Florida Supreme Court rejected that claim on the merits. Id. Spencer did not raise this claim of prosecutorial misconduct again until filing his blue brief with this Court.

Notably, the misconduct claim concerning Karen's dog was never mentioned in any way in Spencer's § 2254 petition, not even under the different heading of ineffective assistance of appellate counsel. See Mills v. Singletary, 63 F.3d 999, 1008 n. 11 (11th Cir. 1995) (explaining that we will not consider a claim that is not raised in the 28 U.S.C. § 2254 petition and was not considered by the district court).

Thus, we are left with only one claim of prosecutorial misconduct that we may consider on the merits -- Spencer's allegation that the prosecutor wrongfully told the jury during closing argument at the guilt phase that Karen Spencer was armed with a rifle on the night before her murder. In particular, the prosecutor said:

> The night before, on January 17, 1992, Krista Mays was in the house with Karen Spencer. She told you that she was there from 8:30, that she came at 8:30 originally, and she left at two in the morning. That when she answered – that when Karen answered the door, that she, Krista Mays, saw the rifle. Karen answered the door with the rifle in her hand.

(Tr. at 1040). This comment was made after the trial court had sustained Spencer's objection to Krista Mays' testimony that Karen was carrying a rifle around the house the evening before she was murdered because she was afraid of Spencer. The trial court also sustained Spencer's objection to the prosecutor's comment during closing, but denied his motion for a mistrial. On direct appeal, the Florida Supreme Court denied the claim on the merits, finding that, although the comment was improper, it did not "deprive the defendant of a fair and impartial trial [or] materially contribute to the conviction," it was not "so harmful or fundamentally tainted as to require a new trial," and it was not "so inflammatory that [it] might have influenced the jury to reach a more severe verdict than that it would have

19

otherwise." Spencer, 645 So.2d at 383.

On collateral review, the state trial court explained that this claim was procedurally barred because it was raised on direct review; the Florida Supreme Court did not comment on this part of the trial court's opinion, but did affirm the opinion in its entirety. However, that state procedural bar is not a procedural bar that precludes our review today. The Supreme Court recently made clear that,

> [w]hen a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review . . . . When a state court refuses to readjudicate a claim on the ground that it has been previously determined, the court's decision does not indicate that the claim has been procedurally defaulted. To the contrary, it provides strong evidence that the claim has already been given full consideration by the state courts and thus is ripe for federal adjudication.
>
> A claim is procedurally barred when it has not been fairly presented to the state courts for their initial consideration -- not when the claim has been presented more than once.

Cone v. Bell, 556 U.S. --, 129 S. Ct. 1769, 1781 (2009) (citation omitted); see also Owen v. Sec'y for Dep't of Corr., 568 F.3d 894, 914-15 (11th Cir. 2009). This claim of prosecutorial misconduct was fairly presented to the state courts on direct appeal and disposed of on the merits. However, this claim is without merit.

"To find prosecutorial misconduct, a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." United States v. Eyster, 948 F.2d 1196, 1206

20

(11th Cir. 1991). The Supreme Court has held that a death sentence is unconstitutional only if the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quotation marks and citation omitted); see also Romine v. Head, 253 F.3d 1349, 1366 (11th Cir. 2001) ("[H]abeas relief is due to be granted for improper prosecutorial argument at sentencing only where there has been a violation of due process, and that occurs if, but only if, the improper argument rendered the sentencing stage trial fundamentally unfair."). Indeed, the Supreme Court recognized that a defendant's due process right to a fair trial is not violated even if the prosecutor's remarks are "undesirable or even universally condemned." Darden, 477 U.S. at 181. Thus, due process is denied only "when there is a reasonable probability," or "a probability sufficient to undermine confidence in the outcome," that, but for the offending remarks, "the outcome of the proceeding would have been different." Eyster, 948 F.2d at 1206-07 (citations and internal punctuation omitted). If the misconduct fails to render the trial fundamentally unfair, habeas relief is not available. Land v. Allen, 573 F.3d 1211, 1219 (11th Cir. 2009).

In determining whether the act of misconduct rendered the trial fundamentally unfair, we measure the remark against the totality of the facts and

21

circumstances. Hall v. Wainwright, 733 F.2d 766, 773 (11th Cir. 1984). "In determining whether arguments are sufficiently egregious to result in the denial of due process," facts such as the following may be considered: "(1) whether the remarks were isolated, ambiguous, or unintentional; (2) whether there was a contemporaneous objection by defense counsel; (3) the trial court's instructions; and (4) the weight of aggravating and mitigating factors." Land, 573 F.3d at 1219-20. Moreover, we consider "the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused," and "the strength of the competent proof to establish the guilt of the accused." Davis v. Zant, 36 F.3d 1538, 1546 (11th Cir. 1994). Thus, where the evidence of guilt is overwhelming, an improper comment by a prosecutor usually does not render the trial fundamentally unfair in violation of the Constitution. See Land, 573 F.3d at 1220.

Here, the single comment during closing argument that the victim possessed a rifle during the evening before she was murdered because she feared that her husband, who had previously been imprisoned for violently beating her, and had recently savagely attacked her and her son in their home, might return and harm her was not remotely enough to render Spencer's trial fundamentally unfair. The remark was isolated, there was a contemporaneous objection by defense counsel that was sustained by the trial court, the remark only referenced Karen's subjective

fear of Spencer, not any conduct by Spencer himself, and the evidence of Spencer's guilt was overwhelming.

Little more than a month before Karen's murder, Spencer choked and hit Karen and threatened to kill her. He was arrested for this crime and, while he was in jail the next day, Spencer called Karen and again threatened to kill her as soon as he was released from jail. After his release from jail, Spencer told a friend that he should take Karen out on their boat and throw her overboard; two days later he told the same friend that Karen refused to go out on the boat with him. Less than one month after he attacked Karen the first time, Spencer broke into her home in the early morning and savagely beat both her and Timothy with a clothes iron. During the attack, Spencer threatened to kill Timothy, saying "You're next; I don't want any witnesses." A few weeks later, Spencer returned to Karen's home and brutally murdered Karen in her backyard in front of Timothy, beating Karen in the head with a brick, slamming her head against a concrete wall until she lost consciousness, threatening to attack Timothy with a knife when he attempted to rescue his blood-covered mother, and then repeatedly stabbing Karen in the chest. Timothy fled the scene and when he returned with the police, they found that Karen had been stabbed to death and suffered blunt force trauma to the back of her head.

On this record, there can be little doubt that the evidence of petitioner's guilt was overwhelming. Nor can there be any doubt that many of the other pieces of independent evidence gave the jury ample reason to believe that Karen feared Spencer would harm or kill her before he actually murdered her. Finally, Timothy testified that his mother possessed the rifle the prosecutor referenced in the closing argument, and testified that she kept that rifle in her bedroom -- the same rifle Timothy attempted to use to defend his mother from Spencer's attack.

In short, Spencer has not shown that the Florida Supreme Court's rejection of his prosecutorial misconduct claim was contrary to, or constituted an unreasonable application of clearly established Supreme Court law. The district court did not err in denying Spencer's § 2254 petition.

**AFFIRMED.**