# Supreme Court of Florida

_____

No. SC2026-0880

_____

**DUSTY RAY SPENCER,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

June 18, 2026

PER CURIAM.

Dusty Ray Spencer is a prisoner under sentence of death for the murder of his wife, Karen Spencer. Governor DeSantis issued a death warrant on May 26, 2026, setting Spencer's execution for June 25, 2026. Spencer appeals from the trial court's order summarily denying his third successive motion for post-conviction relief filed under Florida Rule of Criminal Procedure 3.851. He also requests a stay of execution. We have jurisdiction. *See* Art. V, § 3(b)(1), Fla. Const.; *see also State v. Fourth Dist. Ct. of Appeal*, 697 So. 2d 70, 71 (Fla. 1997) (holding "that in addition to our appellate

jurisdiction over sentences of death, we have exclusive jurisdiction to review all types of collateral proceedings in death penalty cases"). For the reasons set out below, we affirm the summary denial of post-conviction relief and deny Spencer's request for a stay of execution.

I

On January 18, 1992, Spencer murdered his wife and business partner, Karen Spencer. This Court previously set out these facts:

> In early December 1991, Karen asked Spencer to move out of the house. On December 10, 1991, Spencer confronted Karen about money which she had withdrawn from the business account. During this argument, Spencer choked and hit Karen and threatened to kill her. Spencer was arrested after Karen reported the incident to the police. According to Karen's account to a police officer, Spencer called her from jail the next day and stated that he was going to finish what he had started as soon as he got out of jail.
>
> Although Karen asked Spencer to return home during the holidays, she asked him to leave again after Christmas was over. While Spencer was drinking with friends on New Year's Day, he told one friend that he should take Karen out on their boat and throw her overboard. Two days later he told that friend that Karen refused to go out on the boat anymore.
>
> On January 4, 1992, Spencer returned to Karen's home and got into a fight with Karen in her bedroom.

Karen's teenage son Timothy Johnson was awakened by this fight. When Timothy entered his mother's bedroom, he saw Spencer on top of Karen, hitting her. When Timothy tried to intervene, Spencer struck him in the head with a clothes iron. Spencer followed Timothy back to his bedroom and struck him several more times with the iron. Spencer told Timothy, "You're next; I don't want any witnesses." Karen fled the house and sought help from a neighbor. When Timothy attempted to summon help on the telephone, Spencer yanked the phone cord from the wall. Spencer then fled the house and left town. Timothy and Karen were taken to the hospital and treated for their injuries. At the hospital, Karen told the treating physician that Spencer had hit her with an iron. At trial, the physician stated that Karen's wounds were consistent with having been inflicted with an iron.

Spencer returned to Karen's house on the morning of January 18, 1992. Timothy was again awakened by a commotion, grabbed a rifle from his mother's bedroom, and found Karen and Spencer in the backyard. Timothy testified that Spencer was hitting Karen in the head with a brick, and that he observed a lot of blood on Karen's face. Timothy tried to shoot Spencer, but the rifle misfired and he instead struck Spencer in the head with the butt of the rifle, which was shattered by this impact. Spencer pulled up Karen's nightgown and told her to "show your boy your pussy." He then slapped Karen's head into the concrete wall of the house. Karen told Spencer to "stop." When Timothy attempted to carry his mother away, Spencer threatened him with a knife. Timothy ran to a neighbor's house to summon aid.

When the police arrived at the scene, they found Karen dead. She had been stabbed four or five times in the chest, cut on the face and arms, and had suffered blunt force trauma to the back of the head. The medical examiner testified that cuts on Karen's right hand and arm were defensive wounds and that death was caused

by blood loss from two penetrating stab wounds to the heart and lung.

*Spencer v. State,* 645 So. 2d 377, 379–80 (Fla. 1994).

A jury found Spencer guilty of first-degree murder, aggravated assault, aggravated battery, and the lesser-included offense of attempted second-degree murder. *Id.* at 380. The jury then recommended a death sentence by a seven-to-five vote. *Id.* The trial court agreed and sentenced Spencer to death. *Id.*

On direct appeal, we affirmed[1] Spencer's first-degree murder conviction but vacated the death sentence and remanded for reconsideration, concluding that the trial court had improperly found an aggravating factor and failed to consider two statutory mitigating circumstances. *Id.* at 385. After hearing additional argument from the parties on remand, the trial court again imposed a death sentence. *Spencer v. State,* 691 So. 2d 1062, 1063 (Fla. 1996).[2] We affirmed that sentence on appeal. *Id.* at 1066. For

---

1. There was no majority opinion, but there was a majority to affirm the judgment of conviction.

2. The trial court determined the State had proven two aggravating factors: (1) previous conviction of another violent felony based upon Spencer's contemporaneous convictions and (2) the murder was especially heinous, atrocious, or cruel ("HAC").

post-conviction timeliness purposes under Florida Rule of Criminal Procedure 3.851, finality occurred when the United States Supreme Court denied certiorari review on October 6, 1997. *See Spencer v. Florida*, 522 U.S. 884 (1997).

Over the years since, on multiple occasions, Spencer has asserted unsuccessful collateral challenges to both the judgment and death sentence, in both state and federal courts. *See Spencer v. State*, 842 So. 2d 52 (Fla. 2003) (affirming denial of Spencer's initial motion for post-conviction relief and denying habeas relief); *Spencer v. State*, 23 So. 3d 712 (Fla. 2009) (unpublished table decision) (affirming summary denial of Spencer's first successive motion for post-conviction relief); *Spencer v. State*, 259 So. 3d 712 (Fla. 2018) (affirming summary denial of Spencer's second successive motion for post-conviction relief); *Spencer v. Florida*, 587

*Spencer*, 691 So. 2d at 1063. It also found two statutory mitigating circumstances: (1) Spencer committed the murder while under extreme mental or emotional disturbance and (2) his ability to appreciate the criminality of his conduct or conform his conduct to the law was impaired. *Id.* The trial court also identified several non-statutory mitigating circumstances, including Spencer's history of drug and alcohol abuse, paranoid personality disorder, childhood sexual abuse by his father, honorable military service, good employment record, and ability to function in a structured environment without women. *Id.*

- 5 -

U.S. 1028 (2019) (denying Spencer's petition for writ of certiorari); *Spencer v. Crosby*, No. 6:03-CV-991-ORL-28, 2006 WL 7069916 (M.D. Fla. Sep. 7, 2006) (denying habeas relief); *Spencer v. Sec'y, Dep't of Corr.*, 609 F.3d 1170 (11th Cir. 2010) (affirming denial of habeas relief); *Spencer v. McNeil*, 562 U.S. 1203 (2011) (denying Spencer's petition for writ of certiorari).

On May 26, 2026—twenty-nine years after Spencer's death sentence became final and fifteen years following disposition of Spencer's last collateral effort—Governor DeSantis signed Spencer's death warrant, setting his execution for June 25, 2026. Spencer subsequently filed a demand for additional public records, one directed to the Florida Department of Corrections ("the department") under section 27.7081(8), Florida Statutes, and Florida Rule of Criminal Procedure 3.852(i), seeking records related to Florida's lethal injection protocol. The department and the state attorney's office both filed objections to the demand.

In conjunction with his public-records demand, Spencer also filed his third successive motion for post-conviction relief, making two claims: (1) that the department's alleged failure to follow its published lethal injection protocol violates his rights under the

Eighth and Fourteenth Amendments to the United States Constitution and corresponding provisions of the Florida Constitution; and (2) that his execution would constitute cruel and unusual punishment under the Eighth Amendment, given his advanced age and status as an elderly person. The trial court denied Spencer's public-records demand and, in a separate order, summarily denied his motion for post-conviction relief.

Spencer now seeks relief from this Court, raising two issues related to his latest post-conviction motion.[3]

## II

The trial court has the authority to summarily deny a successive motion for post-conviction relief if either it fails to sufficiently "allege factual elements sufficient to constitute a basis for the collateral relief sought" or "the record conclusively shows no entitlement to relief." *State v. Weeks*, 166 So. 2d 892, 897 (Fla. 1964) (internal quotations omitted); *see also State v. Reynolds*, 238 So. 2d 598, 600 (Fla. 1970) (holding that the trial court "may make a summary disposition" when it determines that the motion either

---

3. Spencer does not raise the denial of his public-records demand as a basis for vacating the trial court's summary denial.

"is defective in form or substance and insufficient to state a prima facie case entitling the prisoner to relief" or "appears to be sufficient, but the files and records in the case *conclusively* refute the allegations or otherwise *conclusively* preclude relief"); *Muhammad v. State*, 426 So. 2d 533, 535 (Fla. 1982) ("If the motion and the record and files of the case conclusively show that the movant is not entitled to relief, the motion may be denied without an evidentiary hearing."); Fla. R. Crim. P. 3.851(f)(5)(B).

In reviewing the trial court's summary denial, we must treat the defendant's "allegations as true except to the extent that they are conclusively rebutted by the record." *Harich v. State*, 484 So. 2d 1239, 1241 (Fla. 1986); *see also Tompkins v. State*, 994 So. 2d 1072, 1081 (Fla. 2008). "The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden." *Freeman v. State*, 761 So. 2d 1055, 1061 (Fla. 2000). "We must examine each claim to determine if it is legally sufficient, and, if so, determine whether or not the claim is refuted by the record." *Id.*

Applying these principles here, we conclude that the trial court's summary denial was not error meriting any appellate relief.

A

Spencer first argues that the department's alleged failure to adhere to its published lethal injection protocol violates his rights under the Eighth and Fourteenth Amendments to the United States Constitution and corresponding provisions of the Florida Constitution. Relying on records disclosed within another inmate's post-warrant litigation, Spencer claims the department routinely deviates from its published lethal injection protocol.

Spencer describes several examples of alleged maladministration of that protocol: record logs listing the ad hoc removal of lethal injection drugs from inventory, use of expired drugs—in particular, etomidate—during some executions, failure to contemporaneously document and accurately record the type and amount of drugs used during executions, and the administration of incorrect drug doses. He maintains these alleged deviations from Florida's constitutional lethal injection protocol create risk of needless pain and suffering. He also contends that, because of his cirrhosis, Florida's lethal injection protocol poses a heightened risk of pain and suffering as applied to him.

The trial court summarily denied relief, concluding the claim was both untimely and without merit.  We agree on both points.

At the outset, the claim is untimely.  Rule 3.851(d)(1) requires that a "motion to vacate judgment of conviction and sentence of death must be filed by the defendant within 1 year after the judgment and sentence become final."  Spencer's judgment and sentence became final nearly thirty years ago.  Rule 3.851(d)(2) provides three exceptions to raising a post-conviction claim outside of the one-year timeframe:

> (A) the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, or
>
> (B) the fundamental constitutional right asserted was not established within the period provided for in subdivision (d)(1) and has been held to apply retroactively, or
>
> (C) postconviction counsel, through neglect, failed to file the motion.

Spencer has not demonstrated that any exception applies here.

Spencer's motion described his cirrhosis as "longstanding," and his attached, supporting medical declaration referenced scarring effects associated with his "significant past medical history

of cirrhosis" occurring secondary to COVID in 2020. At his *Huff*[4] hearing, Spencer's lawyer acknowledged that the cirrhosis diagnosis "has been in the record since 2012." Yet Spencer did not assert the condition as a basis for challenging Florida's lethal injection protocol until after the signing of his death warrant, his lawyer insisting that any earlier challenge would have been "deemed premature because he was not eligible for execution at that time," thus placing him in a "Catch-22." Not so.

The exceptions provided by rule 3.851—most relevant here being the exception under subdivision (d)(2)(A)—do not permit a capital defendant to wait indefinitely until a death warrant is issued; the clock instead runs from the date of discoverability, even for a claim in a post-warrant motion. *Cf. Mills v. State*, 684 So. 2d 801, 805 (Fla. 1996) (applying discoverability requirement in review of post-warrant motion and finding claim procedurally barred because the witness on which it relied testified at the original trial and had been available since then); *Glock v. Moore*, 776 So. 2d 243, 251 (Fla. 2001) (finding claim in post-warrant motion for relief to be

---

4. *Huff v. State*, 622 So. 2d 982 (Fla. 1993).

procedurally barred because it was based on information available in publicly available reports "for a number of years").  Florida's "current three-drug protocol has remained essentially unchanged since 2017."  *Randolph v. State*, 422 So. 3d 166, 172 (Fla.), *cert. denied*, 146 S. Ct. 819 (2025).  According to Spencer's own papers, his cirrhosis diagnosis is not new.  He has known about it for years.  We have consistently rejected arguments that method-of-execution claims are ripe during post-warrant litigation when a medical condition was discovered years earlier.  *See Lukehart v. State*, SC2026-0736, 2026 WL 1480328, at *4 (Fla.) (documented kidney disease in 2023), *cert. denied*, 25-7491, 2026 WL 1530138 (U.S. June 1, 2026); *Randolph*, 422 So. 3d at 172–73 (diagnosed with lupus in 1990); *Tanzi v. State*, 407 So. 3d 385, 392 (Fla.) (medical conditions present as early as November 2009), *cert. denied*, 145 S. Ct. 1914 (2025); *Rogers v. State*, 409 So. 3d 1257, 1266–67 (Fla.) (experts testified about porphyria diagnosis during penalty phase), *cert. denied*, 145 S. Ct. 2695 (2025); *Cole v. State*, 392 So. 3d 1054, 1064–65 (Fla.) (suffered from Parkinson's since 2017), *cert. denied*, 145 S. Ct. 109 (2024).

Moreover, Spencer does not meaningfully identify how the alleged deviations from protocol might exacerbate his cirrhosis, causing needless suffering. Nor does he explain why any cirrhosis-related risk would arise only in the context of those deviations. To the contrary, Spencer concedes that his cirrhosis poses a risk "even if the protocol is followed." Because his asserted cirrhosis is untethered from the alleged deviations from protocol, the claim does not rest on a new operative factual predicate and remains untimely under rule 3.851.

Even if the claim was timely, though, it would nevertheless fail on the merits. To prevail on a method-of-execution claim, Spencer must "(1) establish that the method of execution presents a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering and (2) identify a known and available alternative method of execution that entails a significantly less severe risk of pain." *Asay v. State*, 224 So. 3d 695, 701 (Fla. 2017) (citing *Glossip v. Gross*, 576 U.S. 863, 877 (2015)); *Bucklew v. Precythe*, 587 U.S. 119, 139–40 (2019) (reconfirming "that anyone bringing a method of execution claim alleging the infliction of

unconstitutionally cruel pain must meet the *Baze-Glossip* test"[5]).

Spencer falls short of meeting this standard. His allegations center on the purported deviations from protocol indicated by the records in his possession. Here, the relevant "question is not whether protocol deviations occurred," but whether Spencer's "allegations would demonstrate a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering." *Heath v. State*, 426 So. 3d 1253, 1262 (Fla.), *cert. denied*, No. 25-6746, 2026 WL 363902 (U.S. Feb. 10, 2026). They do not. As we recently explained:

> The alleged failure to document the removal of drugs from inventory until one or two days after an execution would not, without more, show a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering during an execution. Nor would the alleged failure to log the removal of etomidate from inventory establish such a risk where the autopsy indicates the drug was, in fact, administered. . . . [The defendant's] suggestion that inventory removals . . . reflect amounts less than required by the protocol show that incorrect doses were used is speculative and [the defendant] does not allege that such incorrect doses would create a demonstrated risk of severe pain. The same is true of the alleged use of expired drugs.

*Id.*

---

5. *Baze v. Rees*, 553 U.S. 35 (2008).

Spencer's cirrhosis-based claim fares no better. He insists the amount of etomidate used during the execution could spike his blood pressure, rupture his esophageal varices, and cause severe bleeding. He submitted an affidavit from Dr. Joel Zivot, who opined to those possible effects. "But speculative and conclusory allegations that lethal injection protocols present a substantial risk of serious harm are insufficient to warrant an evidentiary hearing." *Id.* at 1261. Spencer's allegations concerning the potential interaction between etomidate and his cirrhosis remain speculative and do not "establish that the method of execution presents a substantial and imminent risk that is sure or very likely—in other words, a virtual certainty—to cause serious illness and needless suffering." *Id.* at 1262. Accordingly, Spencer has failed to demonstrate the "virtual certainty" of needless suffering required to make a viable Eighth Amendment claim.

Finally, Spencer also failed to identify a known and available alternative method of execution that would significantly reduce the alleged risk of pain, instead claiming that doing so would be "impractical." *See Glossip,* 576 U.S. at 877 (requiring a capital defendant making a method-of-execution challenge to identify an

- 15 -

alternative method).  A proposed alternative method must be "feasible, readily implemented, and in fact significantly reduce[] a substantial risk of severe pain."  *Tanzi,* 407 So. 3d at 393 (alteration in original) (quoting *Glossip,* 576 U.S. at 877).  Spencer has made no such showing.

Accordingly, the trial court did not err in denying an evidentiary hearing and summarily denying this claim.

B

Spencer next argues his execution would violate the Eighth Amendment because he is seventy-four years old and an elderly person.  He asks this Court to recognize a categorical exemption from execution based on advanced age, contending his execution would otherwise constitute cruel and unusual punishment and offend evolving standards of decency.  The trial court properly summarily denied this claim.

As a threshold matter, this claim is untimely and procedurally barred.  Spencer has not demonstrated that any exception to the one-year filing requirement imposed by rule 3.851(d)(1) applies.  As the trial court observed, Spencer is now seventy-four years old, yet he did not raise this claim until nearly a decade after reaching the

age at which he now contends a categorical exemption from execution should apply. Indeed, he identifies no meaningful distinction arising within the year before filing: his age obviously always being known, and the mere progression from one year in age to the next then not creating a new factual predicate every time under rule 3.851. *See Smithers v. State*, 420 So. 3d 460, 465 (Fla.) *cert. denied*, 146 S. Ct. 323 (2025) ("While Smithers is correct that he could not have known exactly when his death warrant would be signed, he has known for several years that upon the signing of his death warrant and the exhaustion of any related successive postconviction process, he would fall within the class of individuals that he now seeks to exempt from execution due to advanced age. Thus, his claim is untimely and fails to meet any exception provided in rule 3.851(d)(2).").

Even so, we have rejected similar requests to recognize a categorical exemption from execution based on advanced age.[6] *See*

---

6. To the extent Spencer points to Florida statutory provisions enhancing punishments for criminal offenses committed against victims aged sixty-five or older as evidence of evolving standards of decency, those enactments do not alter our analysis. Neither the United States Supreme Court nor this Court has recognized a

*generally id.*; *Trotter v. State*, 428 So. 3d 68 (Fla.), *cert. denied*, 146

S. Ct. 755 (2026).  The only age-based exemption from execution

recognized by the United States Supreme Court is for individuals

under the chronological age of eighteen when they committed the

offense.  *See Roper v. Simmons*, 543 U.S. 551, 578 (2005).

> Indeed, as we explained in *Smithers*:

> Because the Supreme Court has interpreted the Eighth
> Amendment to limit the exemption from execution . . .
> based on age to those whose chronological age was less
> than eighteen years at the time of their capital crime(s),
> this Court is bound by those interpretations and is
> precluded from interpreting Florida's prohibition against
> cruel and unusual punishment to exempt . . . those
> whose chronological age was over eighteen years at the
> time of their capital crime(s).

420 So. 3d at 465 (emphasis omitted) (quoting *Gudinas v. State*,

412 So. 3d 701, 713 (Fla. 2025)).

We have explained that the Supreme Court's "interpretation of

the Eighth Amendment is both the floor and the ceiling for

protection from cruel and unusual punishment in Florida."

*Barwick v. State*, 361 So. 3d 785, 794 (Fla. 2023) (addressing the

conformity clause of Article I, section 17 of the Florida

---

categorical exemption from execution based on advanced age, and
those provisions do not supply a basis to do so.

- 18 -

Constitution). No decision from the Supreme Court has read the Eighth Amendment as categorically exempting defendants of advanced age from execution, and we are not about to create one now. Spencer is thus foreclosed from relief on this basis.

III

For these reasons, we affirm the trial court's summary denial of Spencer's third successive motion for post-conviction relief, and we decline to stay his execution.

No oral argument is necessary, and no motion for rehearing will be considered. The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and COURIEL, GROSSHANS, FRANCIS, SASSO, and TANENBAUM, JJ., concur.
LABARGA, J., concurs in result.

An Appeal from the Circuit Court in and for Orange County, James Craner, Judge – Case No. 481992CF000473000AOX

Eric Pinkard, Capital Collateral Regional Counsel, Julissa Fontán, Assistant Capital Collateral Regional Counsel, and John "Jack" LoBianco, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

for Appellant

James Uthmeier, Attorney General, Tallahassee, Florida, Joshua E. Schow, Assistant Attorney General, Tampa, Florida, and Doris

Meacham, Special Counsel, Assistant Attorney General, Tampa, Florida,

for Appellee